```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
OLIVER DOUCE,                           :
                    Plaintiff,          :
                                        :    08 Civ. 483 (DLC)
         -v-                            :
                                        :    OPINION & ORDER
ORIGIN ID TMAA 1404-236-5547, KATHLEEN  :
BROOM, THE NEW AT&T CINGULAR WIRLESS,   :
                    Defendants.         :
----------------------------------------X
```

Appearances:

Pro Se Plaintiff:
Oliver Douce
1208 Clay Avenue, # 1S
Bronx, NY 10456

For Defendants:
Charles E. Dorkey, III
S. Jane Moffatt
McKenna Long & Aldridge
230 Park Avenue
New York, NY 10169

DENISE COTE, District Judge:

On August 31, 2007, pro se plaintiff Oliver Douce ("Douce") filed this action against his cellular telephone service provider, AT&T Mobility LLC ("ATTM"), formerly known as Cingular Wireless, and one of its employees, Kathleen Broom ("Broom"). On April 17, 2008, defendants moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. On July 14, the Court granted Douce leave to amend his complaint to allege facts supporting his assertion of diversity jurisdiction.

Douce filed an amended complaint on August 18.  Defendants have renewed their motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim.  In the alternative, defendants request a stay pending arbitration of Douce's claims.

BACKGROUND

The following facts are taken from Douce's amended complaint and documents on which the complaint relies.[1]  In 1996, Douce, a resident and citizen of New York, signed a contract

---

[1]   Douce filed his amended complaint with the Court's Pro Se Office along with several supporting documents, including a completed New York Bureau of Consumer Frauds and Protection consumer complaint form; a credit refund from ATTM; a brochure regarding local number portability; a Notice of Judgment against ATTM and in Douce's favor from Bronx County Small Claims Court; an unexecuted copy of a Settlement Agreement with ATTM from a 2005 dispute; a letter from ATTM, with enclosures, requesting Douce to execute the enclosed Settlement Agreement and Exhibits; a printout of an email exchange with the ATTM Port Activation Center; a 2006 invoice for the 7491 Account; the receipt from a two-year agreement between Douce and ATTM dated December 20, 2007; images of a car; a March 2007 license for Tropical Brazilian Grill; a menu from the restaurant, and a notice of Chapter 7 bankruptcy of the restaurant filed April 22, 2008. Under the Federal Rules of Civil Procedure, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (citation omitted); see Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

with ATTM,[2] a Georgia-based company, for provision of services on cellular telephone number ***-7491 (the "7491 Account").  Douce states that he was an ATTM customer for thirteen years, and had twenty-seven years of business connected to the 7491 telephone number.[3]  He believed that the 7491 Account was his only account with ATTM.  On April 11, 2007, Douce received a telephone call from an ATTM employee informing him that he was in arrears on a cellular telephone account bearing his name, but of whose existence he was unaware.  The ATTM employee informed Douce that this second account had been opened in March 2007 (the "March 2007 Account").

According to Douce, immediately following the April 11 telephone call, ATTM terminated service for the 7491 Account due to Douce's failure to pay the March 2007 Account bill on time.  On May 28, 2007, Douce spoke with Kathleen Broom, a paralegal working for ATTM, to try to resolve the problem.  Broom told Douce that he was not responsible for payment on the March 2007 Account.  Nonetheless, Broom told Douce, if he paid $130 to ATTM, she would restore service on the 7491 Account.  Douce paid the $130, but service on the 7491 Account was never restored.  Broom informed Douce that, because his telephone had been

---

[2] At the time plaintiff signed his initial cellular telephone contract, ATTM was known as AT&T Wireless Services, Inc.

[3]  There appears to be a discrepancy between the 1996 contract date and these figures, but its resolution is not necessary at this time.

3

disconnected for sixty days, service on the same number could not be restored.

Douce filed a complaint in this action with this Court's Pro Se Office on August 31, 2007, naming a telephone number, Kathleen Broom, and AT&T Wireless as defendants.[4]  On December 21, 2007, Douce entered into a new two-year Wireless Service Agreement with ATTM (the "December 2007 Contract") for cellular telephone service.  The December 2007 Contract incorporates the Terms of Service, which are printed in a separate seventeen-page booklet, by reference.  One section of the Terms of Service, entitled "Dispute Resolution by Binding Arbitration," states that "AT&T [Mobility] and you agree to arbitrate all disputes and claims between us."

Defendants moved to dismiss the complaint on April 17, 2008 or, in the alternative, for a stay pending arbitration, pursuant to the arbitration clause in the December 2007 Contract between Douce and ATTM.  ATTM, construing the complaint liberally, identified claims for (1) violation of regulations promulgated by the Federal Communications Commission ("FCC"); (2) violation of the Federal Trade Commission Act ("FTCA"); (3) violation of the Fourteenth Amendment, Clause 5; (4) violation of the federal

---

[4] The documents filed with Douce's complaint reveal that he brought two previous state court actions against ATTM.  It is unclear whether these actions arose from the same set of facts presented here.

number portability regulation, 47 C.F.R. §52.31; (5) breach of contract; (6) misrepresentation; (7) conversion of property; and (8) concurrent negligence.

A July 14, 2008 Opinion and Order ("the July 14 Opinion") found that Douce failed to state a federal cause of action. Douce v. Origin TMAA 1404-236-5547, No. 08 Civ. 483 (DLC), 2008 WL 2755831, at *2-*3 (S.D.N.Y. Jul. 14, 2008). While diversity jurisdiction over this action could exist if $75,000 or more were in controversy, Douce had not demonstrated a "reasonable probability" that the $75,000 threshold was met. Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d 214, 221 (2d Cir. 2006) (citation omitted). The July 14 Opinion granted Douce leave to amend his complaint solely for the purpose of alleging facts to support diversity jurisdiction and dismissed his claims brought under federal law. The July 14 Opinion did not address defendants' motion for a stay pending arbitration.

On August 18, Douce filed an amended complaint against "The New AT&T Cingular Wireless" and Kathleen Broom only. The amended complaint alleges that, because of defendants' conduct, Douce's $80,000 restaurant and $40,000 limousine businesses suffered and he was forced to file for bankruptcy. Douce has dropped all claims previously brought under federal law.

Defendants moved to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. Douce filed a

response.  Defendants' reply does not pursue the allegation that no diversity jurisdiction exists, but focuses on the arbitration issue and Douce's alleged failure to state a claim.[5]

DISCUSSION

Defendants argue that Douce's claims must be dismissed for three reasons: there is no subject-matter jurisdiction, his claims are subject to binding arbitration, and he has failed to state a claim for fraudulent misrepresentation, negligence, conspiracy, conversion, or breach of contract.  The argument that there is no subject matter jurisdiction because Douce has not demonstrated the "reasonable probability" of $75,000 or more in controversy necessary for diversity jurisdiction will be addressed first, followed by the arbitration issue.  Because Douce's claims are subject to arbitration, it is not necessary to address whether he has stated a claim upon which relief may be granted.

1. Diversity Jurisdiction

While defendants do not press the argument that Douce has not alleged $75,000 in controversy, courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."

---

[5] Douce filed an unauthorized surreply on October 16.

Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); see also Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003).  As the July 14 Opinion explained, Douce bears the burden of showing a "reasonable probability" that the threshold amount in controversy for diversity jurisdiction is satisfied. Colavito, 438 F.3d at 221 (citation omitted).  "This burden is hardly onerous, however, for we recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  Scherer v. Equitable Life Assur. Soc'y of the U.S., 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted).  The amount the plaintiff claims "controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Chase Manhattan Bank, N.A. v. American Nat. Bank and Trust Co. of Chicago, 93 F.3d 1064, 1070 (2d Cir. 1996) (citation omitted).

Douce has pleaded facts in his amended complaint sufficient to allege diversity jurisdiction.  Douce states that he now seeks $120,000 plus punitive damages.  He alleges that the wrongful termination of his telephone service caused him to lose a restaurant business in which he had invested $80,000 and a limousine business from which he earned $40,000 a year.  Douce's $120,000 damages claim is therefore sufficient to allege an

7

amount in controversy in excess of $75,000 and confer subject matter jurisdiction.

2. Arbitration

The arbitration provision at issue, the Terms of Service incorporated into the December 2007 Contract, states that

> AT&T [Mobility] and you agree to arbitrate all disputes and claims between us.  This agreement to arbitrate is intended to be broadly interpreted.  It includes, but is not limited to. . . claims that arose before this or any prior Agreement . . . .[6]

Defendants argue that this provision requires a dismissal or stay of this action so that Douce's claims may be submitted to arbitration.  Douce argues that the December 2007 Contract's Terms of Service do not apply to his dispute because the dispute arose under an earlier contract.  Douce also states that he was "force[d]" to agree to the December 2007 Contract.

There is "a strong federal policy favoring arbitration as an alternative means of dispute resolution." Ross v. American Exp. Co., 547 F.3d 137, 142 (2d Cir. 2008) (citation omitted). This policy animated the passage of the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq.  Id. (citing Hall Street Assocs., L.L.C. v. Mattel, Inc., 128 S.Ct. 1396, 1402, --- U.S. ----

---

[6] Defendants include the Terms of Service as an exhibit filed with their motion to dismiss.  The Court will consider the Terms because they are part of the two-year contract that Douce subsequently signed after his initial number was terminated, which he references in his amended complaint.

8

(2008)). The FAA requires that a contract provision to arbitrate disputes arising out of the contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes "as a matter of federal law" that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Phillips v. Audio Active Ltd., 494 F.3d 378, 389 (2d Cir. 2007) (citation omitted). "[U]nless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, the federal courts are obliged to find a particular claim falls within the scope of an arbitration clause." Id. at 390 (citation omitted). Where an arbitration clause is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered," including "matters going beyond the interpretation or enforcement of particular provisions of the contract which contains the arbitration clause." JLM Industries, Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 172 (2d Cir. 2004) (citation omitted).

A. Validity of 2007 Arbitration Agreement

Douce argues that defendants are attempting to "shield" themselves behind the FAA and an arbitration clause "without

9

limitation." Douce's statement in the amended complaint that "Defendant herein then force the Plaintiff into a new 2 year Contract" raises an issue of the validity of the December 2007 Contract. Douce alleges that the December 2007 Contract is invalid because ATTM procured his consent through coercion. Defendants argue that the validity of the contract is a question for the arbitrator, not the Court.

While there is a strong federal policy in favor of arbitration, "it remains the case that arbitration is a matter of consent, not coercion." Id. at 171 (citation omitted). Challenges to the validity of a contract, as opposed to challenges specifically to the arbitration clause, are arbitrable. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006). Similarly, claims of fraudulent inducement and unconscionability, which are general challenges to the enforceability of a contract, are arbitrable. JLM Industries, Inc., 397 F.3d at 170. Douce's statement that he was forced to sign the contract is a challenge to the contract as a whole and should consequently be addressed through arbitration.[7]

---

[7] Douce's unauthorized sur-reply contains arguments concerning the validity of the arbitration clause. The arbitration issue had been fully identified in defendants' moving papers, and defendants' reply did not present any new arguments on the subject. Douce never requested leave to file a sur-reply. Douce's opposition is therefore the governing statement of his position on the arbitration clause, and the arguments in his sur-reply will not be considered. See, e.g., Bayway Refining

B.  Arbitration of Pre-Existing Disputes

Douce's claims assert wrongdoing by the defendants during a period prior to the execution of the December 2007 Contract. Disputes that pre-date an arbitration clause are not subject to arbitration "unless such preexisting disputes are brought within the scope of the clause." Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One, 903 F.2d 924, 928 (2d Cir. 1990).  See also Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration International, 198 F.3d 88, 99 (2d Cir. 1999) (approving arbitration of a dispute predating the arbitration agreement where the agreement applied to "any controversy" between the parties).

The arbitration clause in the Terms of Service incorporated into the December 2007 Contract is broad, requiring arbitration of "all disputes and claims," including "claims that arose before this or any prior Agreement."  See JLM Industries, 387 F.3d at 172 (similar language from agreements is classified as "broad").  The plain language of the arbitration clause requires both parties to submit any disputes between them, regardless of

---

Co. v. Oxygenated Marketing and Trading A.G., 215 F.3d 219, 227 (2d Cir. 2000) (where a party presents new support in a reply brief, the district court should permit a sur-reply).  In any event, none of the arguments in the sur-reply alter the conclusions reached in this Opinion.

11

when they occur, to arbitration.  This language meets the standard described in Peerless Importers and Smith/Enron because it applies to all controversies and specifically brings preexisting disputes within the scope of the clause.  Therefore, the agreement to arbitrate applies to the entirety of Douce's dispute with ATTM, even though the dispute pre-dates the agreement to arbitrate.

C.  Dismissal or Stay

The remaining issue is whether the litigation should be stayed or dismissed pending arbitration.  Defendants submit that it must be dismissed under Rule 12(b)(1), Fed. R. Civ. P., but request a stay in the alternative pursuant to Section 3 of the FAA.  Section 3 provides that

> the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.  The district court has the discretion to choose between dismissing and staying the matter.  Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90, 92-93 (2d Cir. 2002) (discussing trial courts' ability to stay proceedings or dismiss the action in favor of arbitration).

A decision to dismiss has implications for the speed with which the arbitration of the dispute may begin, because a dismissal is reviewable by an appellate court under Section 16(a)(3) of the FAA, whereas a stay is an unappealable interlocutory order under Section 16(b).  Id. at 93.  Staying the action is therefore more likely to allow the matter to proceed to arbitration in an expeditious manner.  Id.  The Second Circuit urges courts deciding whether to dismiss or stay litigation when referring a matter to arbitration to "be mindful of this liberal federal policy favoring arbitration agreements" and consider that "[u]nnecessary delay of the arbitral process through appellate review is disfavored."  Id. (citation omitted).  To promote expeditious resolution of this dispute, this action shall be stayed pending arbitration.

## CONCLUSION

Defendants' September 5, 2008 motion to dismiss is denied.  The action is stayed pending the completion of arbitration.  If he chooses to continue to pursue his claims, plaintiff shall commence arbitration within thirty days of this Opinion in accordance with the procedures set forth in the Terms of

Service, pages 12-16, that accompany the December 2007 Contract.


SO ORDERED:

Dated:   New York, New York
         February 17, 2009

                              _____
                                      DENISE COTE
                              United States District Judge

Copies sent to:

Oliver Douce
1208 Clay Avenue, # 1S
Bronx, NY 10456

Charles E. Dorkey, III
McKenna Long & Aldridge
230 Park Avenue
New York, NY 10169